UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERINA M. CALLOWAY,

    Plaintiff,

v.

                                      Hon. Paul L. Maloney

                                      Case No. 1:23-cv-1299

DOWAGIAC UNION SCHOOLS,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Terina M. Calloway filed a pro se complaint against her employer, Dowagiac Union Schools (DUS), on December 13, 2023, using the form complaint for a civil case.[1] (ECF No. 1 at PageID.1.) Calloway alleges that the Court has jurisdiction over her claims under Title VII of the Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act of 1967 (ADEA).[2]

On December 14, 2023, I granted Calloway's motion to proceed *in forma pauperis*. (ECF No. 4) Accordingly, I have conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it is frivolous, malicious, or fails to state a claim upon which

---

[1] It appears that DUS still employs Calloway, as nothing in her compliant suggests that she was terminated or resigned from her position.

[2] Calloway also refers to the Equality Act (ECF No. 1 at PageID.3), although it is not clear from the complaint whether she refers to the Equality Act of 2010—which is a piece of legislation enacted in the United Kingdom rather than the United States—*see Griffin v. Mattek*, No. 22-cv-1174, 2022 WL 16531078, at *6 (E.D. Wis. Oct. 28, 2022) (citing Equality Act of 2010, available at https://www.legislation.gov.uk/ukpga/2010/15/pdfs/ukpga_20100015_en), or the Equality Act, H.R. 5, which expands protections under Title VII to prohibit discrimination based on sexual orientation and gender identity, but has not been passed into law. In either case, Calloway fails to state a claim under the Equality Act.

relief can be granted. Based on this review, I conclude that the complaint fails to state a claim upon which relief can be granted.

## I. Background

Calloway, who is 52 years old and an African American female, has been employed by DUS as a bus driver since October 7, 2016. She is the union representative for bus drivers. Scott Woods, a white male, is the Transportation Director of the bus garage and supervises Calloway and the other bus drivers. (ECF No. 1 at PageID.6.)

On October 20, 2022, Calloway was giving out awards for the bus drivers' yearly cook off when other drivers approached her about unspecified concerns and issues that had not been resolved within the transportation department. Later that day, Calloway reported these concerns to Roy Freeman, the president of the bus drivers' union. Freeman said that he would schedule a meeting with Woods. Following this conversation, Freeman arranged a meeting with Woods for November 2, 2022, which Stacy Richie from H.R. would also attend. (*Id.*)

On November 2, 2022, Woods emailed Calloway stating that he wanted to meet with her on November 11, 2022. He also advised that she might want union representation at the meeting because it could result in disciplinary action. The next day, Freeman and Calloway met with Woods and Richie regarding the drivers' concerns. During this meeting, Calloway told Richie about an incident in which a co-worker had acted unprofessionally towards Calloway in front of Woods, after Calloway had reported an incident to Jane (Woods's secretary). Woods was dismissive of the drivers' concerns and said that he had the authority to run the operation as he saw fit. He was only interested in who brought the concerns to Freeman. Calloway admitted that she had done so. (*Id.*)

On November 11, 2022, Calloway and Freeman met with Woods regarding Woods's November 2, 2023 email to Calloway. During the meeting, Woods stated that he had received several anonymous phone calls concerning four safety violations by Calloway. After Calloway denied the allegations, Woods said that he would set the issue aside until he decided what to do. (*Id.*)

On November 14, 2022, Calloway put a sticky note on Woods's office door about a light near her bus that was not working. Woods had failed to fix the light even after Calloway had complained about it on several prior occasions. (*Id.* at PageID.7.)

On November 16, 2022, Woods notified Calloway that he wanted to have a follow-up meeting with her on November 21, 2022. He also advised her that she might want union representation because the meeting might result in disciplinary action. During the November 21 meeting, Woods gave Calloway the write-ups, which had changed from the previous warnings and included six additional violations. When Freeman inquired whether any further disciplinary action would be taken, Woods responded that he had not made that determination. Following the meeting, Freeman told Calloway that Woods was retaliating against Calloway and harassing her. He also told Calloway that he would take care of the problem. (*Id.*)

In late November 2022, while Calloway was "pretripping" her bus, Woods approached her and asked her whether she had been checking her "yellows." Calloway assured him that she had done so and invited him to check the cameras, as he had been doing for other issues. Woods responded that he had already checked the cameras and then told her that she should have come to him with "the problem" instead of Ron the mechanic. Calloway told him that she could not have done that because he does not listen to her. Calloway asked Woods what she had done to deserve the write-ups, and Woods said that she had put herself in the middle of a conflict. Woods said that

3

Calloway should not have made an issue of the bus accident because the driver was found not at fault and the superintendent had agreed with that conclusion. Woods ended the conversation by telling Calloway that she might receive more complaints and should "watch her back." (*Id.* at PageID.8–9.)

On December 6, 2022, Calloway told Jane that she was not feeling well and might not be available to drive her route the next day. Jane told Calloway to go home and get some rest because no subs were available. The next day, Calloway was awakened by a phone call and realized that she was running late for work. Calloway contacted Jane and told her that she was on her way. When Calloway arrived at the bus garage she apologized to Woods, who responded, "No problem." Jane told Calloway that she was fine because she had never missed a day of work. (*Id.* at PageID.7)

Sometime prior to December 10, 2022, Freeman met with the DUS superintendent regarding Calloway's write-ups. Freeman asked whether Woods was permitted to use anonymous calls for an excuse to pull videos (apparently of Calloway's driving) and for write-ups, and the superintendent responded that Woods was permitted to do so. Freeman complained about the disparity between Calloway's treatment and that of another driver who had been in an accident while transporting children. The superintendent responded that he and Woods had determined that no discipline was warranted because the driver was not at fault in the accident, no tickets had been issued, and the driver had only hit a pothole and slid off the road. (*Id.* at PageID.8.)

On December 10, 2022, Freeman told Calloway that Woods had asked him to advise Calloway that because she had overslept (apparently on December 7, 2022), she should be cautious

4

"because of everything that was going on."³ Woods also mentioned that he had seen Calloway with her bus at the Elks Club. Calloway told Freeman that she had only pulled into the parking lot there as a safe place to check her bus to make sure that no children were still aboard. Freeman told Calloway to "keep her nose clean" and that it would blow over. (*Id.*)

On December 15, 2022, Calloway filed a charge of discrimination with the Michigan Department of Civil Rights/Equal Employment Opportunity Commission (EEOC). (*Id.*)

On September 25, 2023, Calloway returned to work after her daughter had been transferred to the Helen DeVos Children's Hospital for a month with a life-threatening rare condition. After completing her routes, Jane told Calloway that she had added an additional stop to her route and that she would have to pick up this student and drop her off at Middle Crossing every day. Calloway noticed that this was out of her jurisdiction, and she told Jane that she already had 77 children on her bus and asked Jane why she was making things hard on her. Jane told Calloway that she would just have to deal with it. Jane told Calloway that she and Woods had made the decision, and the superintendent had approved it. (*Id.* at PageID.9–10.)

On September 29, 2023, Calloway informed Jane that her route had been changed for no reason and requested that it be changed back to the previous route. Jane denied her request and told her that, if she didn't like it, she would call the superintendent to request a meeting for Calloway. Calloway declined the offer and told Jane that she was capable of arranging a meeting herself. After Calloway left the building, she encountered the superintendent and asked him if he could reinstate her previous route. He told Calloway that he was looking into it. When Calloway

---

³ The complaint alleges that this conversation occurred on October 10, 2022, but it appears that this is a mistake and that Calloway intended to allege that it occurred on December 10, 2022.

returned from her route, she saw Woods in the transportation office. He did not speak to Calloway and instead just stared at her with his hands in his pockets. (*Id.* at PageID.10.)

## II.  Motion to Dismiss Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted). In applying this standard, a court may consider "any exhibits attached [to the Complaint], public records, items appearing in the record of the case and

exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

Because Calloway is proceeding pro se, the Court must construe her pleading more liberally than it does for pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). But this liberal pleading standard "is not without its limits, and does not 'abrogate basic pleading essentials in pro se suits.'" *Clark v. Johnston*, 413 F. App'x 804, 817 (6th Cir. 2011) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Stated differently, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf" *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001). To require otherwise "would not only strain judicial resources . . . but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Discussion

#### A. Title VII Race Discrimination

Although Calloway does not allege claims in specific counts, under the relief portion of her form complaint she alleges racial discrimination because she was disciplined for safety violations but a white coworker (the worker involved in the accident) was not. Pursuant to Title VII, an employer is prohibited from "discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010) (quoting 42 U.S.C. § 2000e-2(a)(1)). A plaintiff is not required to allege an indirect-evidence prima facie case of discrimination under the *McDonnell Douglas* burden-shifting framework at the motion to dismiss stage. *Keys v. Humana, Inc.*, 684 F.3d 605, 606 (6th Cir. 2012). Nonetheless, a plaintiff claiming race discrimination is still required to "allege

7

sufficient factual content to make a claim for relief plausible." *Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 722 (E.D. Mich. 2021). In other words, a plaintiff must allege enough facts to allow the court to infer that the plaintiff suffered the alleged adverse employment action because of her race. *See Wiseman v. Spectrum Healthcare Res.*, No. 2:21-cv-02042, 2021 WL 4399718, at *3 (W.D. Tenn. Sept. 27, 2021) (quoting *Flynn v. Memphis Pathology Lab. (AEL)*, No. 2:19-2882-CV-SHL-TMP, 2020 WL 5801087, at *3 (W.D. Tenn. Sept. 29, 2020)).

Here, Calloway's allegations fail to support a claim of racial discrimination. She claims she was treated differently than the white driver who was involved in the accident. Although Calloway need not allege a prima facie case under *McDonnell Douglas*, her own allegations belie discrimination because they show that she and the white employee were not at all similarly situated. That is, Calloway admits that Woods and the superintendent found no basis to discipline the white worker for the accident because she was not at fault and was not ticketed. Calloway does not allege that their determination had no basis in fact. In contrast, Calloway was not involved in an accident. Woods and the superintendent received reports that Calloway had committed safety violations and reviewed video in investigating the alleged violations, which apparently supported the alleged violations. Calloway's comparison of her circumstances to those of the white employee thus does not raise a plausible inference of discrimination. *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (stating that an employee with whom the plaintiff seeks to compare herself must "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it") (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Because this is Calloway's only ground for a race discrimination claim, she fails to state a claim.

### B.    Age Discrimination

Regarding age discrimination, Calloway asserts only that DUS "took advantage of the plaintiff's age." (ECF No. 1 at PageID.5.) None of Calloway's factual allegations support a plausible inference of age discrimination. While Calloway mentions her age, she fails to allege any fact suggesting that her age was a motivating fact in any adverse employment action. Moreover, Calloway does not allege that she was treated differently from any non-protected employee. *See Williams v. Scan Source*, No. 2:17-cv-02578, 2018 WL 5218011, at *2 (W.D. Tenn. Jan. 23, 2018) (dismissing pro se plaintiff's age discrimination because she failed to allege "any facts from which the Court can infer that she was discriminated against because of her age, other than the fact that she was over forty years old when the alleged discrimination took place"). Therefore, the complaint also fails to allege plausible ADEA discrimination claim.

### C.    Retaliation and Harassment

Last, Calloway mentions retaliation and harassment. Regarding retaliation, the essential elements are that: (1) the plaintiff engaged in protected activity; (2) the defendant knew of this protected activity; (3) the defendant subsequently took an adverse action against the plaintiff; and (4) the adverse action was causally connected to the protected activity. *Lundy v. General Motors Corp.*, 101 F. App'x 68, 73 (6th Cir. 2004). Calloway's allegation that she filed a charge with the MDCR/EEOC on December 15 2022, and served it on DUS satisfies the first two elements. In addition, for purposes of review under Section 1915(e)(2), her allegations concerning her route change in September 2023 could conceivably be considered adverse action. However, Calloway fails to plausibly establish the requisite causal connection because the adverse action occurred more than nine months after she engaged in protected activity.

In *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008), the Sixth Circuit explained:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Id.* at 525. "[C]ases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months." *Parnell v. West*, 114 F.3d 1188, at *3 n.1 (6th Cir. 1997) (citing cases supporting this proposition).

Here, the only basis to infer a causal connection is temporal proximity, but under Sixth Circuit authority, a period of more than nine months is too long, without more, to establish the requisite causal connection. Accordingly, Calloway fails to state a retaliation claim. *See Arteaga v. Cinram-Technicolor*, No. 3:19-cv-349, 2020 WL 433990, at *6 (M.D. Tenn. Jan. 28, 2020), *report and recommendation adopted*, 2020 WL 1905176 (M.D. Tenn. Apr. 17, 2020) (concluding on Section 1915(e)(2) review that a period of about ten months between the protected conduct and adverse action was insufficient to support an inference of retaliation in the absence of other factual allegations suggesting that the plaintiff's firing was motivated by unlawful retaliation).

Last, Calloway alleges that Woods "harass[ed]," "[b]elittled," and "]b]ull[ied]" her (ECF No. 1 at PageID.5), but she alleges no fact raising a plausible inference that such conduct was based on race, age, sex, or some other unlawful ground. Thus, she fails to state an actionable harassment claim under both Title VII and the ADEA.

### D.    Statute of Limitations

Even if Calloway had alleged a valid claim(s) under Title VII or the ADEA, it would be subject to dismissal as untimely. As set forth in the Notice of Right to Sue that Calloway attached to her complaint (ECF No. 1-1), she had 90 days after receipt of the notice to file an action in federal or state court. *See* 42 U.S.C. § 2000e-5(f)(1) ("If a charge filed with the Commission . . .

is dismissed by the Commission . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge...."); *Minor v. Northville Pub. Sch.*, 605 F. Supp. 1185, 1189 (E.D. Mich. 1985). The 90-day filing deadline acts as a statute of limitations. *Austion v. City of Clarksville*, 244 F. App'x 639, 648 (6th Cir. 2007) ("Once the administrative agency notifies the plaintiff of the dismissal of the charge by issuing a right-to-sue letter, the plaintiff has 90 days to file a civil action."); *Gui v. Inkster Sch. Dists.*, No. 12-15654, 2013 WL 1282020, at *3 (E.D. Mich. Mar. 27, 2013) ("Any action not commenced within ninety days of receiving a right-to-sue notice will be time barred."). "The federal courts have strictly enforced Title VII's ninety-day statutory limit." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000).[4] The Sixth Circuit has held that there is a rebuttable presumption of receipt of a Notice of Right to Sue five days after mailing. *Graham-Humphreys*, 209 F.3d at 557. As that panel explained:

> The Sixth Circuit has resolved that notice is given, and hence the ninety-day limitations term begins running, on the fifth day following the EEOC's mailing of an RTS notification to the claimant's record residential address, by virtue of a presumption of actual delivery and receipt within that five-day duration, unless the plaintiff rebuts that presumption with proof that he or she did not receive notification within that period.

*Id.* (italics in original) (footnote omitted).

The envelope containing the notice, also attached to the complaint, is postmarked August 29 or 30, 2023. (*Id.* at PageID.13.) Applying the Sixth Circuit's presumption, Calloway would have received the notice, at the latest, on September 5, 2023. Calloway thus had until December 4, 2023, to file her complaint, but did not file it until December 13, 2023. I note that the bottom

---

[4] The 90-day period applies to ADEA claims as well as Title VII claims. *See Summers v. Walgreen Co.*, No. 15-cv-12836, at *2 (E.D. Mich. Apr. 26, 2016).

right-hand corner of the notice contains the following notation signed by Calloway: "opened 9/13/23." (*Id.* at PageID.12.) That Calloway opened the envelope on September 13, 2023, does not rebut the presumption that she received it earlier, by September 5, 2023. But even accepting September 13, 2023, as the date of receipt, the complaint is still untimely by one day as the 90-day period expired on December 12, 2023. As the Sixth Circuit has observed, the 90-day filing period is strictly applied, and a Court must dismiss a suit "[e]ven where a plaintiff misses the filing deadline by only one day . . . ." *McKibben v. Hamilton Cnty.*, No. 99–3360, 2000 WL 761879, at *3 (6th Cir. May 30, 2000) (citing *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 646 (6th Cir. 1998); *Goodman v. City Prods. Corp., Ben Franklin Div.*, 425 F.2d 702, 703-04 (6th Cir. 1970)).

It is well-established that, because the 90-day period is not jurisdictional in nature, it is subject to waiver, estoppel, and equitable tolling. *Truitt*, 148 F.3d at 646. The Sixth Circuit has identified five factors that may be pertinent to the equitable tolling analysis: "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement for filing his claim." *Martin v. Ford Motor Co.*, No. 21-6089, 2022 WL 17076782, at *1 (6th Cir. Aug. 23, 2022) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 500 (6th Cir. 2001) (citing *Truitt*, 148 F.3d at 648)). "Not all factors may be relevant, however, and a litigant's failure to meet a legally-mandated deadline due to unavoidab[le] . . . circumstances beyond that litigant's control is often the most significant consideration in courts' analyses." *Id.* (internal quotation marks omitted) (quoting *Zappone v. United States*, 870 F.3d 551, 556 (6th Cir. 2017)). A lack of prejudice "alone is not a sufficient basis for allowing equitable tolling relief to the plaintiff." *Amini*, 259 F.3d at 501 (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)). Moreover, requests for

equitable tolling are granted "only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990); *Baldwin*, 466 U.S. at 151–52.

Here, nothing in Calloway's complaint suggests a basis for applying equitable tolling. If she opened the envelope on September 13, 2023, she had ample time to draft and file her complaint and was on notice of the filing requirement set forth in the Notice of Right to Sue. Moreover, there is no indication that Calloway was prevented from filing a timely complaint by circumstances beyond her control. In short, Calloway fails to allege compelling equitable considerations supporting equitable tolling. Accordingly, untimeliness provides an additional ground for dismissal. *See Reid v. Sears Holdings Mgmt. Corp.*, No. 15-2070, 2015 WL 925535 (W.D. Tenn. Feb. 26, 2015) (dismissing Title VII claims on screening pursuant to Section 1915 as barred by the 90-day period where the complaint failed to allege facts to support equitable tolling).

### IV. Conclusion

For the reasons set forth above, I recommend that the Court dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted.

The Court must also decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Good faith is judged objectively, *Coppedge v. United States*, 369 U.S. 438, 445 (1962), and an appeal is not taken in good faith if the issue presented is frivolous, defined as lacking an arguable basis either in fact or law. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). For the same reasons that I recommend dismissal of the action, I discern no good faith basis for an appeal and recommend that, should Plaintiff appeal this decision, the Court assess the $505.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610-11.

Date:  December 29, 2023                                    /s/ Sally J. Berens
                                                            SALLY J. BERENS
                                                            U.S. Magistrate Judge

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).